UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

IN RE:   STEPHANIE UMSTEAD,   :
:   Chapter 13
Debtor.   :
:   Bky. No.  12-16185 ELF
:

# M E M O R A N D U M

**I.**

In this chapter 13 case, Debtor Stephanie Umstead ("the Debtor") has filed objections to three (3) unsecured proofs of claim. All three (3) claims are for debts arising from open-end consumer credit accounts, i.e., credit card debt. The Debtor raises the same objection for all three (3) claims. She disputes whether the claimant is the owner of the credit card account at issue and whether each claimant is a "creditor."

At the hearing on the objections, the Debtor presented no evidence disputing the validity or amount of the underlying debts. Nor did the Debtor present any evidence relating to the identity of the proper holder of each claim. Her position is that none of the three (3) proofs of claim is self-sustaining and therefore, each proof of claim should be disallowed.

These contested matters present a common question that arises regularly in proof of claim litigation in consumer bankruptcy cases: what is the minimum amount of information that must accompany a proof of claim filed by an assignee of a debt arising from an open-end credit card account for the claim to be treated as prima facie valid and therefore, allowable over an objection that is not supported by any evidence?

Fed. R. Bankr. P. 3001 addresses this issue and there is much case law on the matter. In

fact, I discussed the subject in a lengthy opinion less than three (3) years ago in In re O'Brien, 440 B.R. 654, 665 (Bankr. E.D. Pa. 2010).

Recently however, Rule 3001(c) was amended and has materially modified the filing obligations of credit card claimants. This case presents my first opportunity to examine and apply the new amendment since O'Brien. As explained below, in comparison to the prior version of the Rule 3001, as I construed it in O'Brien, I perceive current Rule 3001 as increasing the obligations of credit card claimants in some respects and easing their obligations in other respects.

Based on my review of all three (3) of the Debtor's objections under the current rule, I find that all three (3) claims are prima facie valid. Because the Debtor presented no evidence to contest the validity or amount of the claims, her objections will be overruled and all three (3) claims will be allowed as filed.

**II.**

The Debtor commenced this chapter 13 bankruptcy case on June 28, 2012. On July 19, 2012, the Clerk issued a notice advising creditors that December 26, 2012 was the deadline for filing proofs of claim (except for governmental units). Before I analyze the Debtor's objections, I will describe each claim at issue – Claim Nos. 12, 13 & 14 – all of which were timely filed.

**A. Claim No. 12**

On October 10, 2012, an attorney acting on behalf of an entity named Keystone Recovery Partners, Series A ("Keystone") filed a proof of claim in the amount of $680.45. On its face, the

proof of claim stated that the basis for the claim was "creditcard/other." The proof of claim form was accompanied by an account summary which included the following information:[1]

|  |  |
|---|---|
| Balance at Time of Filing: | $680.45 |
| Principal Balance: | $403.71 |
| Interest | $37.74 |
| Fees, Expenses, or Other Charges | $239.00 |
| Last Payment Date: | February 9, 2011 |
| Last Payment Amount: | $408.01 |
| Last Purchase Date: |  |
| Last Purchase Amount: |  |
| Merchant: | US AIRWAYS |
| Issuer: | Barclays Bank |
| Assignor: | Barclays Bank |
| Account Number: | XXXXXXXXXXX4195 |
| Open Date: | 12/26/2008 |

On January 3, 2013, a notice of Transfer of Claim Other than for Security was filed, indicating that Keystone transferred Claim No. 12 to Keystone Recovery Partners, Series II ("KRP").[2] See Fed. R. Bankr. P. 3001(e)(2) (governing the transfer of a claim other than security after a proof of claim has been filed).

On February 5, 2013, KRP (the assignee) filed an Amended Claim No. 12 ("Amended POC No. 12"). Amended POC No. 12 included an amended account summary, which supplemented the original account summary with the following additional information:

---

[1] I have omitted certain information included on the account summary that is not material to the issue at hand.

[2] The notice indicates that the transferor and transferee were being represented by a single law firm, the law firm that filed Claim No. 12 on behalf of Keystone.

|  |  |
|---|---|
| Last Purchase Date: | 2/13/12 |
| Last Purchase Amount: | $13.90 |
| Charge Off Date | 8/23/12 |

In addition, KRP attached the following documentation to the amended proof of claim:

(1) a bill of sale effective October 5, 2012 between Barclays Bank Delaware and Ophrys, LLC (referencing a "Bankruptcy Forward Flow Purchase Agreement" dated January 30, 2012 between the same parties);

(2) an assignment transferring on October 5, 2012 "all of the accounts" in a particular named data file from Ophrys, LLC to Keystone;

(3) an assignment transferring on December 27, 2012 "all of the accounts" in a particular named data file from Keystone;

(4) a document titled a "PurchaseFile" that references Ophrys, Barclays and the Debtor and that appears to summarize the status of the account at issue and the Debtor's bankruptcy status;

(5) copies of credit card account statements for ten (10) months during the period ranging between January 2011 through July 2012 for a US Airways credit card issued by Barclay's Bank, with an account number matching the account number listed on Debtor's Schedule F.

### B.  Claim No. 13

Portfolio Recovery Associates, LLC ("PRA") filed Claim No. 13 on December 28, 2012 through its agent, PRA Receivables Management, LLC ("PRA Receivables").  Attached to the proof of claim is an Account Summary that states that:

- the Account Number is *5432;

- Capital One, NA was the original creditor and the entity from whom PRA acquired the account;

- Capital One, NA was the owner of the account as of the last transaction;

- the date of the last transaction was 11/16/2011;

- the date of the last payment was 11/16/2011;

- the charge-off date was 7/30/2012;

- both the claim balance and principal are $3,7946.76;

- the interest and fee amounts are $0.00.

Also, attached to the proof of claim was the following additional documentation:

(1) a "Limited Power of Attorney" to the proof of claim authorizing PRA Receivables to file proofs of claim on behalf of PRA; and

(2) a bill of sale from Capital One Bank (USA) to PRA, with a closing date of August 24, 2012 (and with the purchase price and the identity of the assigned accounts redacted).[3]

### C. Claim No. 14

PRA Receivables filed a second proof of claim for PRA on December 28, 2012, Claim No. 14. Similar to Claim No. 13, Claim No. 14 attached an Account Summary that included the following information:

- the Account Number is *6343;

- the debt type was "credit card"

- Fred Meyer was the original creditor;

- Citibank was the entity from whom PRA acquired the account;

---

[3] One other document was attached to Claim No. 13. It appears to be an undated computer printout titled "Capital One Cycle Facsimile Report" that has the Debtor's name on it and sets forth certain information regarding a redacted account number (such as "New-Balance," "Minimum Payment" and "Interest-YTD"). The purpose of this attachment to the proof of claim is unclear.

- Citibank, NA was the owner of the account as of the last transaction;

- the "loan open" date was 7/27/11;

- the last transaction is "N/A;"

- the date of the last payment was left blank;

- the charge-off date was 8/2/12;

- both the claim balance and principal are $1,552.10;

- the interest and fee amounts are $0.00.

Also attached to Claim No. 14 were the following documents:

(1) a "Limited Power of Attorney" to the proof of claim authorizing PRA Receivables to file proofs of claim on behalf of PRA;

(2) a bill of sale and assignment dated August 28, 2012 providing for the transfer from Citibank to PRA of certain accounts described in "Exhibit 1 and the final electronic file," neither of which are attached; and

(3) a Littman Jewelers/Barclay Jewelers Account Statement, account number *6343, with a statement closing date of 7/16/12, a balance of $1,552.10 and a past due amount of $224.00.[4]

### D. The Debtor's Objections

On January 7, 2013, the Debtor filed separate objections to all three (3) claims asserting the same basis: "the claimant is not a creditor of the debtor [and has not] provided any evidence that the debt was assigned to [the claimant]." (Doc. #s 18, 19 & 20, at ¶ 4). With respect to Claim No. 12, the Debtor also objected on the ground that the proof of claim "does not provide any basis for" the $239.00 in fees, expenses and other charges and the $37.74 in interest. (Doc. #

---

[4] On its face, the Littman Jewelers/Barclay Jewelers Account Statement includes the following statement: "This Account is issued by Citibank, N.A."

18 at ¶ 3).

KRP filed a response to the Debtor's objection to Claim No. 12.[5] In its response filed on February 7, 2013, KRP pointed out that the Debtor scheduled a Barclays Bank debt for an amount slightly less than that claimed in Amended Claim No. 12 and asserted that the Debtor neither raised an objection cognizable under 11 U.S.C. §502(b) nor produced any evidence that the claim was not due and owing.[6]

Hearings on the objections were held on February 12, 2013. Debtor's counsel appeared, but presented no evidence, instead contending that all three (3) proofs of claim should be disallowed because they are not self-sustaining. No one appeared at the hearing on behalf of the claimants.

## III.

To analyze the merits of the Debtor's objection to these three (3) proofs of claim, I must consider both the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. The most relevant rule, Fed. R. Bankr. P. 3001, was amended, effective December 1, 2012. To appreciate fully the effect of that amendment, it is necessary to place the changes to the rule in a larger context. I will begin with a brief overview of the claims allowance process as it applies to claims of the sort at issue here and pre-amendment Rule 3001. Then, I will consider and apply the Rule,

---

[5] Neither the Federal Rules of Bankruptcy Procedure nor our local rules require that a claimant file a written response to an objection to a proof of claim.

[6] KRP attached to its response the same five (5) sets of exhibits that KRP attached to Amended Claim No. 12, in supplementing the original Claim No. 12.

as amended.

**A.**

The claims allowance process "mirrors, but does not slavishly conform to, the formalities of conventional civil litigation." O'Brien, 440 B.R. at 665. This is because the process is intended to "facilitate the efficient, economical resolution of claims allowance disputes." In re Sacko, 394 B.R. 90, 99 (Bankr. E.D. Pa. 2008).

> The fundamental purpose of the claims allowance process and the various rules for filing of proofs of claim and allocating burdens of proof is to provide a fair and inexpensive procedure for the proper determination of claims on the merits. Those rules and procedures are not properly invoked with regard to a claim unless there is an actual or potential dispute about the debtor's liability vel non or its amount. The bankruptcy rules contemplate resolution of objections to claims as contested matters, not as adversary proceedings. Thus, they envision much simpler, expedited proceedings without all the trappings of normal civil litigation.

Id. (quoting In re Shank, 315 B.R. 799, 814 (Bankr. N.D. Ga. 2004)).

A proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. §502(a). Further, Fed. R. Bankr. P. 3001(f) provides:

> **Evidentiary Effect**. A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.

In In re Wells, 463 B.R. 320, 326 (Bankr. E.D. Pa. 2011), I summarized the effect of Rule 3001(f) as follows:

> "[I]f a proof of claim complies with the Rules of Court and is self-sustaining (i.e., it sets forth the facts necessary to state a claim and is not self-contradictory), it is prima facie valid and the objecting party has the burden of producing evidence to refute the claim." [Sacko, 392 B.R. at 98]. That evidence, "if believed, [must] refute at least one of the allegations that is essential to the claim's legal sufficiency." In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992). If the objector meets that burden of production, the claimant must produce evidence

-8-

to prove the validity of the claim, id. at 174, because "the ultimate burden of persuasion is always on the claimant," In re Holm, 931 F.2d 620, 623 (9th Cir. 1991).

A common dispute arising in claims litigation is whether the proof of claim complies with Fed. R. Bankr. P. 3001(c) and whether the claim is entitled to prima facie evidentiary effect pursuant to Rule 3001(f).

Prior to its amendment effective in December 2012, Rule 3001(c) provided that if a claim is "based on a writing," a copy of the writing must be attached to the proof of claim, unless it has been lost or destroyed, in which case a statement of the "circumstances of the loss or destruction" must be filed with the claim. In addition, because Rule 3001(a) instructs that a proof of claim "conform substantially to the appropriate Official Form," and the appropriate form (Official Form No. 10) authorizes, in some circumstances, the attachment of a "summary," arguably, it also was possible to comply with the rules by attaching a summary, rather than the documents on which the claim was based. See, e.g., In re Plourde, 418 B.R. 495, 503-04 (B.A.P. 1st Cir. 2009).[7]

Determining the scope of the Rule 3001(c) document attachment requirement is extremely important in bankruptcy practice due to the sheer volume of proofs of claim that are

---

[7] See also In re Torres, 2011 WL 4592029, at *4 (B.A.P. 1st Cir. Jan. 19, 2011) (pointing out that "[t]he sufficiency of a summary attached to a proof of claim must be analyzed on a case-by-case basis, taking into account the detail provided, the content of the schedules, and the identity of the objector"). As one court has explained: "To comply with Rule 3001 and be entitled to prima facie evidentiary status, . . . a claim based on a writing must attach one of two things: (1) the writing forming the basis for the claim or a duplicate or (2) a sufficient explanation or summary." In re Pursley, 451 B.R. 213, 220 (Bankr. M.D. Ga. 2011).

Since O'Brien and Pursley were decided, the scope of the document "summary" option may have been circumscribed. Paragraph 7 of the Instructions to Official Form No. 10 now states that the claimant "may attach a summary **in addition** to the documents themselves." (emphasis added). See Advisory Committee Note (2011 Amendment) (stating that a summary may be attached "only" in addition to the documents themselves).

subject to its requirements. Unfortunately, as one commentator observed, the requirements of Rule 3001(c) "are more complex than may be first thought." William L. Norton, Jr., Norton Bankruptcy Rules 2012-13, Rule 3001 Editors' Comment, at 219 (2012). In particular, the application of Rule 3001(c) to claims based on open-end credit card accounts that have been assigned by the original creditor to an assignee-claimant (perhaps multiple times) have been problematic, generating a substantial amount of litigation.

In O'Brien, I considered the requirements of Rule 3001(c) (prior to the 2012 amendment) in a contested matter involving an objection to a credit card claim held by an assignee and drew the following legal conclusions:

- A credit card debt is based on a writing, such that a creditor filing a proof of claim must attach to its proof of claim the "writing" on which the claim is based, in order for the claim to be entitled to prima facie evidentiary effect pursuant to Rules 3001(c) and (f). See 440 B.R. at 661.

- For purposes of Rule 3001(c), a proof of claim filed by an assignee is "based," in part, on the assignment; therefore, to satisfy Rule 3001(c) and obtain prima facie evidentiary status under Rule 3001(f), an assignee filing a proof of claim must attach the written assignment or set forth a summary of the document. Id. at 662.

- A proof of claim that attempts to satisfy Rule 3001(c) by providing a summary rather than attaching the assignment documents must describe the chain of title leading to the assignee in detail and in a clear and coherent manner. Id.[8]

- The failure to comply with Rule 3001(c), and the absence of prima facie evidentiary status under Rule 3001(f) is not, by itself, grounds for disallowance of a claim. Id. at 663-66.

---

[8] The documentation must be enough for the debtor to fairly trace the path of their account from the original creditor to the claimant. See, e.g., In re Rochester, 2005 WL 3670877, at *5-6 (Bankr. N.D. Tex., May 24, 2005) (blanket assignment documents and original account statements were sufficient for debtor to trace account if name of assignor matched scheduled creditor and assignee matched claimant).

- A proof of claim may be prima facie valid despite noncompliance with Rule 3001(c) if it provides sufficient indicia of the claim's validity and amount to justify imposing on the objector the burden and expense of responding with contrary evidence. Id. at 666.[9]

- In evaluating whether a non-conforming proof of claim is nonetheless prima facie valid, the court may consider both the proof of claim itself and information in the bankruptcy record that is subject to judicial notice, including the debtor's bankruptcy schedules. Id.[10]

- In light of the substantial variation in the content of proofs of claim and the information supplied to the court by debtors in their bankruptcy schedules, no hard and fast rules can be set out describing when information in the record may fill in the gaps for proofs of claim that might otherwise lack prima facie evidentiary status under Rule 3001(f); these determinations can be made only on a case-by-case basis. Id. at 666-67.

---

[9]    This principle is analogous to the standard that has developed in federal courts in ruling on motions to dismiss complaints under Fed. R. Civ. P. 12(b)(6). Since the Supreme Court's decisions in Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009), federal courts have measured the sufficiency of a complaint by determining whether its allegations state a plausible claim for relief. In claims litigation, the analysis is similar, albeit arising in a somewhat different context. Under Rule 12(b)(6), the courts are evaluating the allegations in a pleading and deciding if the allegations are sufficient to impose the burden of filing an answer (i.e., another pleading) on the defendant. In the claims litigation context, the court is deciding whether the proof of claim (and possibly other evidence in the bankruptcy record) constitutes sufficient evidence of the validity of the claim to justify imposing on the objector the burden of production of contrary evidence. While this difference is significant, the court's overall evaluation process is similar in both situations.

[10]    Another way to conceptualize this principle and the preceding principle in the text is to view Rule 3001(f) as a non-exclusive "safe-harbor" for a proof of claim to obtain prima facie status. Because, traditionally, a proof of claim is treated, not merely as a pleading, but more like a "verified complaint or deposition," O'Brien, 440 B.R. at 665, other information included in the proof of claim, or otherwise available in the bankruptcy record, may suffice to support the claim and impose the burden of producing rebuttal evidence on the objector.

**B.**

Effective December 1, 2012, Rule 3001(c) was amended to provide as follows:

(1) *Claim Based on a Writing*. **Except for a claim governed by paragraph (3)** of this subdivision, when a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

* * *

(3) *Claim Based on an Open-End or Revolving Consumer Credit Agreement.*

(A) When a claim is based on an open-end or revolving consumer credit agreement — except one for which a security interest is claimed in the debtor's real property — a statement shall be filed with the proof of claim, including all of the following information that applies to the account:

(I) the name of the entity from whom the creditor purchased the account;

(ii) the name of the entity to whom the debt was owed at the time of an account holder's last transaction on the account;

(iii) the date of an account holder's last transaction;

(iv) the date of the last payment on the account; and

(v) the date on which the account was charged to profit and loss.

(B) On written request by a party in interest, the holder of a claim based on an open-end or revolving consumer credit agreement shall, within 30 days after the request is sent, provide the requesting party a copy of the writing specified in paragraph (1) of this subdivision.

On its face, Rule 3001, in its current form, has established separate requirements for proofs of claim arising from open-end consumer credit agreements. The general requirement that

a writing be attached has been **replaced** with two (2) other requirements:

> (1) the disclosure of specified information regarding the status of the account and the assignee's purchase of the account (as set forth in (3)(A)(I)-(iv)); and
>
> (2) the obligation to provide the documents on which the claim is based to a party in interest, **but only upon request**.

If the claimant complies with these requirements, the proof of claim constitutes prima facie evidence of the validity and the amount of the claim pursuant to Rule 3001(f). Advisory Committee Note, Rule 3001 (2011).[11]

After the 2012 amendment, the focus of the claimant's obligation under the rule has shifted from the attachment of documents to the disclosure of particular information regarding the credit card account that the drafters of the Rule deemed most pertinent in the assessment by the debtor (or trustee) of the validity or proper amount of the claim. Specifically, because credit card accounts are frequently assigned, sometimes multiple times, prior to the filing of a proof of claim, the new disclosures are designed to "assist the debtor in associating the claim with a known account," id., thereby assisting the debtor in evaluating whether grounds exist to object to the claim.[12]

At the same time that Rule 3001(c), as amended, has imposed the new disclosure

---

[11] In addition, as the Advisory Committee points out, to obtain prima facie evidentiary effect under Rule 3001(f), a proof of claim based on an open-end consumer credit agreement also must satisfy the requirements of the applicable provisions of Rule 3001(b), (c)(2) and (e).

[12] The Advisory Committee Note refers, in particular, to the potential objector's assessment of the timeliness of the claim. This is not surprising. With some frequency, claims are disallowed upon objection because they are unenforceable under applicable nonbankruptcy law due to the expiration of the statute of limitations. See 11 U.S.C. §502(b)(1); In re Keeler, 440 B.R. 354, 360 (Bankr. E.D. Pa. 2009); In re Michael Angelo Corry Inn, Inc., 297 B.R. 435, 438-39 (Bankr. W.D. Pa. 2003).

obligations on holders of open-end credit accounts described above in lieu of the former "document-attachment" requirement, it has de-emphasized the "assignment history" requirement that some courts have imposed under the prior version of the rule. For example, in O'Brien, I held that the former Rule 3001(c) required assignees to attach documentation verifying the chain of title to the account back to the original creditor, or at least to set out a coherent summary thereof. As of December 1, 2012, this is no longer necessary under the rule. The rule requires only disclosure of the identities of the original creditor and the entity that transferred the account to the claimant. If there were multiple transfers of the account, the rule does not mandate a comprehensive disclosure of the identities of the intermediate transferors and transferees. In short, under the amended rule, a proof of claim without a complete description of the chain of title may be entitled to prima facie evidentiary effect, if the disclosure satisfy Rule 3001(c)(3)(A)(I)-(v).

      This is where Rule 3001(c)(3)(B) comes into play. In balancing the competing interests of the parties, the drafters of the amended rule appear to have concluded that once the debtor (or trustee) has sufficient information regarding the identity and the transactional history of the account, as well as the identity of the most immediate account transferor, the burden of putting the assignee's status as owner of the right to payment at issue lies with the debtor or trustee, who is aided in developing rebutting evidence by the right to make a written request under Rule 3001(c)(3)(B) (without formal discovery) for all of the corroborating documentation.

      One other aspect of Rule 3001(c), as amended, warrants comment.

      Rule 3001(c)(2,,)(D) provides objectors with remedies for a claimant's noncompliance with Rule 3001(c): preclusion from offering additional evidence and/or attorney's fees and

expenses.[13] As written, Rule 3001(c)(2)(D) provides the court with discretion in determining the appropriate response to a claimant's noncompliance with Rule 3001(c). <u>Id</u>. (the court "may" take . . . take . . . the following actions"). If not precluded by judicial action, the rule assumes that the court can consider additional evidence "in any form." <u>Id</u>. Therefore, I do not read the current Rule as overriding prior law insofar as courts have held that the failure to comply with Rule 3001(c), and the absence of <u>prima facie</u> evidentiary status under Rule 3001(f), is not, by itself, grounds for disallowance of a claim. Nor do I perceive any intent to override those court decisions that have held that a proof of claim may be <u>prima facie</u> valid despite noncompliance with Rule 3001(c), if information included in the proof of claim, or other evidence in the bankruptcy case record, provides sufficient indicia of the claim's validity and amount to justify imposing on the objector the burden and expense of responding with contrary evidence. In my view, both of these legal principles, which were articulated in <u>O'Brien</u>, retain their vitality.

With these principles in mind, I will now consider the three (3) proofs of claim at issue in this case.

---

[13]    Rule 3001(c)(2)(D) provides:

> If the holder of a claim fails to provide any information required by this subdivision (c), **the court may**, after notice and hearing, take either or both of the following actions:
>
> > (I) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or
> >
> > (ii) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

(emphasis added).

IV.

**Claim No. 12**

Amended Claim No. 12 does not strictly comply with all of the requirements of Rule 3001(c)(3)(A). Nevertheless, as explained below, I find that the claim is prima facie valid.

In comparing Amended POC No. 12 with the requirements of Rule 3001(c)(3)(A), I find only one shortcoming. It fails to state the identity of the entity to whom the debt was owed at the time of the Debtor's last transaction on the account. See Fed. R. Bankr. P. 3001(c)(3)(A)(ii). In all other respects, the proof of claim is compliant with the rule.

The missing information, the identity of the creditor at the time of the last transaction, bears some logical relationship to the Debtor's objection, i.e., that KRP has not established that it is the rightful creditor on this account, in that the missing information is related to the chain of title.[14] However, after reviewing the bankruptcy record (i.e., the documents attached to the proof of claim and the Debtor's schedules), see O'Brien, 440 B.R. at 666, I conclude that the evidentiary gap has been filled by admissions in the Debtor's schedules and information in the attachments the proof of claim.

The Debtor's Schedule F lists an undisputed "Barclay" credit card debt in an amount very close to that stated in Amended POC No. 12. The debt is listed in Schedule F with an account number ending in 4195, the same account number referenced in Claim No. 12. KRP also attached to Amended POC No. 12 ten (10) months of account statements for a credit card issued by Barclays Bank in the Debtor's name, also with an account number ending in 4195. Further, attached to the amended proof of claim were assignment documents showing that Barclays Bank

---

[14] In some cases, the information also may assist the debtor in identifying the account.

assigned accounts to Ophrys, LLC, that Ophrys, LCC assigned accounts to Keystone and that Keystone had assigned accounts to KRP.

The correlation between the account statements and the Debtor's schedules, along with the assignment documents attached to proof of claim, provide a reasonable basis for tracing the from debt from this credit card account from Barclays to KRP, even in the absence of all of the information required by Rule 3001(c). In the situation presented, the omission of identity of the entity to whom the debt was owed at the time of the Debtor's last transaction on the account appears relatively insignificant.

For these reasons, I am satisfied that Amended Claim No. 12 should be accorded <u>prima facie</u> evidentiary status and that it is appropriate that the Debtor bear the burden of producing evidence to rebut KRP's claim that it is the rightful creditor on this account. Because the Debtor offered no evidence to dispute KRP's creditor status I will overrule that ground of the objection.

Amended Claim No. 12 being prima facie valid, the Debtor's other objection to the claim – that it "does not provide any basis for" the $239.00 in fees, expenses and other charges and the $37.74 in interest – also must be overruled. The burden of production rested with the Debtor and she came forward with no evidence on the issue.[15]

## Claim No. 13

An extended discussion is not necessary with respect to Claim No. 13 filed for PRA by PRA Receivables. Although no response to the Debtor's objection was filed, Claim No.13

---

[15] I note further that a proof of claim need not include all of the evidence in support of the components of the claim. Rule 3001(c)(3) requires only that those components be itemized. KRP complied with that requirement. Had KRP not done so, the outcome may have been different.

satisfies all of the requirements of Rule 3001(c)(3). Therefore, it is entitled to prima facie evidentiary status. I will overrule the objection and allow the claim in full because the Debtor offered no evidence disputing the validity or amount of Claim No. 13.

**Claim No. 14**

On its face, Claim No. 14 does not strictly comply with the Rule 3001(c)(3). Specifically, the Account Summary attached to the proof of claim does not disclose the "last payment date;" that information was left blank.[16] Also, the "last transaction date" was stated as "N/A," which is not a meaningful disclosure. (If there was a debt, there had to be at least one (1) transaction and one (1) transaction date). Notwithstanding these deficiencies, in the circumstances presented here, I conclude that the proof of claim suffices to make out a prima facie case for allowance of the claim.

Rule 3001(c)(3)'s requirement that the last transaction date be disclosed appears to be designed to assist the debtor in evaluating: (1) the timeliness of the claim, (2) whether the amount of the claim is consistent with the debtor's recollection of his or her use of the credit card and, perhaps also even (3) identification of the particular credit card account.

In this case, the last four digits on Claim No. 14 (6343) and the supporting documentation match a debt listed on the Debtor's Schedule F as owing to "Barclay Liitman"[sic]. (Doc. #1,

---

[16] I also note that the "last transaction date" was described as "N/A." I infer that this means that there was only one (1) transaction on the account. Therefore, I do not consider the proof of claim noncompliant with Rule 3001(c)(3)(A)(iv).

Schedule F)  Thus, identification of the proper account referenced in Claim No. 14 could not have been problematic for the Debtor.

As for the timeliness and the amount of the claim, those defenses are not at issue.  The Account Summary states that the loan was opened on July 27, 2011, far too recently to give rise to a statute of limitations defense.  Further, in Schedule F, the Debtor admitted that she is liable on the Barclay/Littman account in an amount very close to that stated in Claim No. 14.  Thus, it is fair to read the Debtor's schedules and her objection as conceding she owes a debt to the holder of the account in roughly the amount in Claim No. 14.  Her objection is limited to the issue whether the claimant (PRA) is the rightful holder of the account. The particular information required by Rule 3001(c) that was omitted from Claim No. 14 bears little, if any, relation to this issue.

The question, then, is whether Claim No. 14 sets forth sufficient information with respect to PRA's asserted status as the rightful account holder as to impose on the Debtor the burden of producing evidence disputing PRA's creditor status.  I conclude that it does.

It is true that Claim No. 14, and the attached documentation, do not trace the entire path of the account from the original creditor to A as O'Brien may have required under the prior version of Rule 3001.[17]  However, as discussed in Part III.B, supra, Rule 3001(c), in its current form, does not mandate the disclosure of the complete link from the initial creditor to the claimant.  So long as the claimant identifies the original claimant and the entity that transferred

---

[17] The proof of claim inexplicably refers to the original creditor as "Fred Meyer" while attaching only a Barclay/Littman account statement and does not explain the connection between Fred Meyer and Barclay/Littman.  Claim No. 14 does, however, provide some link between Barclay/Littman and Citibank, Citibank being the entity that assigned the account to PRA. See n.4, supra.

the account to the claimant, the claimant has complied with the Rule.  Claim No. 14 does so.  In these circumstances, I see no reason to deny prima facie evidentiary status to Claim No. 14 or to disallow the claim in the absence of evidence rebutting the validity or amount of the claim.  In my view, the proof of claim provided the Debtor with sufficient information regarding the assignment history of the account to impose the burden of invoking her rights under Rule 3001(c)(3)(B) and producing evidence negating the existing evidence that PRA is the rightful owner of the account.

## V.

In this case, I have evaluated with the proofs of claim at issue are entitled to prima facie evidentiary status by engaging in the two-step analysis described in my earlier opinion in O'Brien.  The first step is a kind of mechanical application of Rule 3001(c) and (f).  If the proof of claim fails to achieve prima facie status after the first step, I consider all of the information in the proof of claim and bankruptcy record (usually the schedules) in a holistic fashion to determine whether it is appropriate to impose the burden on the objector of producing evidence to dispute the validity or amount of the claim or the assignee's status as the owner of the claim.

Based on that process, and for the reasons set forth above, the Debtor's objections to Proof of Claim Nos. 12, 13 and 14 will be overruled and the claims will be allowed as filed.

Date:  April 3, 2013

**ERIC L. FRANK**
**CHIEF U.S. BANKRUPTCY JUDGE**